**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.H.-1 and J.H.-2**

**No. 20-0991** (Randolph County 19-JA-30 and 19-JA-86)

**MEMORANDUM DECISION**

Petitioner Father J.H.-3, by counsel Morris C. Davis, appeals the Circuit Court of Randolph County's November 10, 2020, order terminating his parental rights to J.H.-1 and J.H.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Timothy H. Prentice, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he did not successfully complete his improvement period.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because both children and petitioner share the same initials, they will be referred to at J.H.-1, J.H.-2, and J.H.-3, respectively, throughout this memorandum decision.

[2]Petitioner also alleges, in one sentence, that because the circuit court erred in finding that he did not successfully complete his improvement period, then "the subsequent finding and termination of his parental rights is also in error because the [c]ourt should not have ended the improvement period . . . as unsuccessful." We note, however, that petitioner provides no substantive argument in support of his assertion that termination was improper, which is in direct contradiction to this Court's rules. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR alleged that law enforcement responded to a report that then-two-year-old J.H.-1 was found "in the middle of the road naked with no supervision." Law enforcement responded to the home, found the mother "passed out on the couch," and spent ten to fifteen minutes waking her. During the investigation, Child Protective Services ("CPS") found the home to be "deplorable with holes in the floor, exposed wires and trash everywhere." CPS observed beer cans laying on the floor and covering the kitchen table. The refrigerator contained very little food and a case of beer. The mother also indicated that the child did not have a bedroom and, instead, slept with petitioner. According to the petition, the following day, CPS received a call from the mother's older child, who is not at issue on appeal. The child explained that the mother "told her she was not allowed to tell CPS anything or [the mother] would hurt her." The child explained that the mother "is really mean," called her vulgar names, and drank alcohol every night. The child also disclosed that the mother physically abused both her and J.H.-1. Finally, the child disclosed physical violence between petitioner and the mother and indicated that the mother "threatens to kill [petitioner] all of the time." During CPS's investigation, petitioner blamed the mother for the incident in which J.H-1 was found wandering the street, indicating that she was awake when he left the home that evening. Based on several conditions, including his failure to protect the child, the DHHR alleged that petitioner abused and neglected J.H.-1.[3]

Following the petition's filing, petitioner waived his preliminary hearing. Further, at a hearing in May of 2019, petitioner stipulated to the fact that he failed to properly supervise the children. The circuit court accepted this stipulation and adjudicated him as an abusing and neglecting parent.

In August of 2019, the court granted petitioner a post-adjudicatory improvement period and directed the multidisciplinary team ("MDT") to develop terms and conditions for the improvement period. Around that time, petitioner and the mother informed the MDT that they

specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to his assertion that termination of his rights was in error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this assignment of error on appeal. Instead, because we find no error in the circuit court's determination that petitioner was unsuccessful in his improvement period, as set forth below, petitioner is necessarily entitled to no relief predicated on that argument.

[3]At the time the initial petition was filed, J.H.-2 was not yet born.

were no longer in a relationship. During that meeting, the mother asked to speak with the MDT without petitioner present, at which point she disclosed an extensive history of domestic violence. According to the mother, petitioner "has broken bones" and "threatened to take [J.H.-1] and never let her see him again." Although petitioner acknowledged that there had been some violence in the relationship, he indicated that it was not severe.

Following several review hearings over the next few months, the court permitted petitioner's improvement period to continue upon finding that petitioner was properly participating. In February of 2020, the court found that petitioner was fully participating, but that the mother, who was not compliant, was eighteen weeks pregnant, had returned to the home, and that the parents were "once again living together." According to the record, the DHHR advised that the parents "need[ed] to be honest about the status of their relationship." The circuit court then granted the parents three-month extensions of their improvement periods.

In June of 2020, the DHHR filed an amended petition to include J.H.-2, who was born shortly before the petition's filing. According to the amended petition, following the August of 2019 MDT meeting where the parents reported they were no longer living together, the MDT continued to receive reports that the parents were romantically involved. The parents denied these assertions. Upon J.H.-2's birth, however, petitioner was reported to be the father. The amended petition also alleged that petitioner was noncompliant with the requirement that he submit to drug screens, having failed to screen between March 9, 2020, and June 22, 2020. According to the amended petition, CPS went to the parents' home to obtain emergency custody of J.H.-2 and discovered that the parents did not have proper bedding for the child. Instead, the mother "had the child sleeping on the couch with a small mattress." The DHHR further alleged that petitioner contacted the DHHR the same evening J.H.-2 was removed and reported that he was on home incarceration in regard to unrelated criminal charges. Petitioner informed the DHHR that he was "not going to have his kids ripped away from him for not having a ride and missing a few drug screens." Following the amended petition's filing, petitioner again stipulated to adjudication, and the court adjudicated him of abusing and neglecting both children.

In September of 2020, the circuit court held a dispositional hearing, during which the DHHR advocated in support of its motion to terminate petitioner's parental rights and presented testimony of a DHHR worker who addressed petitioner's noncompliance with services. Based on the evidence, the court found that petitioner had been participating in an improvement period for an extended period and that he was required to participate in the call-to-test program and drug screens. However, petitioner failed to call in, as required; failed to screen, as required; and tested positive for alcohol several times, including once "during lunch at the noon hour." The court found that alcohol was an important factor in the proceedings, given that "the parties have recognized that drinking also led to domestic violence" between them. As such, the court noted the importance of the requirement that petitioner abstain from drinking alcohol during his improvement period. The court further found that petitioner did not recognize his issues with alcohol or his unwillingness to address the same. Based on this evidence, the court found that petitioner failed to successfully complete his improvement period, was unable or unwilling to provide adequately for the children's needs, and that termination of his parental rights was

3

necessary for the children's welfare. As such, the court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that he did not successfully complete his improvement period. According to petitioner, he took steps to remedy his substance abuse, was gainfully employed, obtained and maintained proper housing, and attended "a multitude of visits." Based on these claims, petitioner asserts that he corrected the conditions that led to the petition's filing. We do not agree.

Factually, petitioner's argument on appeal lacks support in the record. Specifically, the portions of the record to which petitioner cites in support of his claim that he participated in services to the extent that he corrected the issues of abuse and neglect that necessitated the petition's filing simply do not demonstrate this to be the case. For example, petitioner cites to a portion of the record in which he testified that he "participated in one" parenting class. Similarly, another portion of the record to which petitioner cites indicates that he had not had a counseling session since 2019 and "tried to get back into counseling" a few weeks prior to the dispositional hearing. The record also shows that petitioner missed a visit with the children because of a positive alcohol screen. In fact, despite being warned repeatedly that he was not to consume alcohol and the MDT discussing the role alcohol played in the domestic violence in the home, petitioner admitted to having "a few beers" approximately two weeks before the dispositional hearing and that the mother brought beer into their home the week before the hearing. Most importantly, however, is the fact that petitioner testified that he had not fully complied with his improvement period. Given this admission in his testimony below, it is unclear why petitioner argues on appeal that he successfully remedied all conditions of abuse and neglect. Petitioner

---

[4]The mother voluntarily relinquished her parental rights below. The permanency plan for the children is adoption together in the current foster home.

also ignores his testimony that he failed to participate in Alcoholics Anonymous or any other substance abuse treatment, despite that being a condition of his improvement period. Simply put, petitioner's assertions regarding compliance are not supported by his citations to the record in this matter, and we find that they do not entitle him to relief.

We have previously explained that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Here, the court undertook the appropriate review of petitioner's performance and correctly found that it did not justify a return of the children to the home. As set forth above, even the portions of the record to which petitioner cites in support of his appeal evidence his failure to satisfy the conditions of his improvement period, a fact he readily acknowledged in his testimony below. The record shows that petitioner blamed his noncompliance on his work schedule, but we note that this is unavailing, as West Virginia Code § 49-4-610(4)(A) is clear that "[w]hen any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period." Petitioner bore the responsibility for the completion of all the terms and conditions of his improvement period, and the record is clear that he was unsuccessful in regard to many. Because petitioner did not remedy the conditions of abuse and neglect, as he alleges on appeal, we find no error in the circuit court's determination that petitioner did not successfully complete his improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton